Argued July 5, writ denied November 10, 1972

STATE ex rel TANZER et al, *Relators, v.*
WILLIAMS, *Respondent.*

502 P2d 596

*Kathryn V. Kelty,* Assistant Attorney General, Salem, argued the cause for relators.

*C. S. Emmons,* Albany, argued the cause for respondent.

O'CONNELL, C.J.

The relators, representing the Children's Services Division of the Department of Human Resources, seek a writ of mandamus to compel defendant, as circuit judge, to dismiss a pending adoption proceeding on the ground that the Children's Services Division has not given its consent to the adoption of the child.

The child was born on October 1, 1967. On October 4, 1967, the mother executed a release and surrender of the child to the State Public Welfare Commission (predecessor of the Children's Services Division) for the purpose of adoption and at the same time she executed a certificate of waiver and consent to the adoption of the child. The child was illegitimate and consequently it was necessary to have only the consent of the mother.

Shortly after the child was surrendered to the Public Welfare Commission, it placed him in the custody of Clyde and Ruth Barnes, husband and wife. In August, 1971, the Children's Services Division, as successor to the Public Welfare Commission, took the boy from the Barnes home and placed him in the custody of another family. The child had never been placed in the custody of the Barneses or the other family for the purpose of adoption.

Thereafter, Mr. and Mrs. Barnes filed a petition for adoption. The Children's Services Division moved to dismiss the petition on the ground that the division did not consent to the adoption and that without such consent the court lacked jurisdiction to enter a decree of adoption. Shortly after the division filed its motion to dismiss, the Barneses filed a consent to their adoption of the child, executed by the mother, purporting also to withdraw the release and consent executed by her on October 4, 1967.

The trial court denied the motion to dismiss, whereupon the Children's Services Division brought this mandamus proceeding.

The case turns on the construction of ORS 418.270, which provides in part as follows:

"(4) Parents or legal guardians of children whom they have by release or surrender agreement given into the guardianship of incorporated child-caring organizations for the purpose of adoption may, concurrently or subsequently and without any adoption proceeding having been initiated, agree that the release or surrender shall become irrevocable as soon as the child is placed by the agency in the physical custody of a person or persons for the purpose of adoption by them, and waive their right to personal appearance in court in matters of adoption of such children, by a duly signed and attested certificate. From and after such physical placement for adoption such certificate of irrevocability and waiver and the release or surrender may not be revoked by the parent or guardian unless fraud or duress is affirmatively proved.

"(5) No agreement to release or surrender a child for adoption, or other agreement or waiver of rights having the same effect, executed before March 24, 1971, in connection with the surrender of a child into the guardianship of a child-caring

agency for purposes of adoption, may be revoked or held invalid for any reason except upon affirmative proof of fraud or duress."

It will be noted that subsection (4) provides that after the effective date of the Act, if the parent or legal guardian agrees that the release or surrender of the child for adoption shall become irrevocable when the child is placed for adoption, the agreement may not be revoked, absent fraud or duress when the child is so placed. However, subsection (5), if read literally, makes the surrender of a child to a child-caring agency for purposes of adoption irrevocable even though the child has not been put out for adoption.

Since the consent to adoption originally executed by the mother antedated the effective date of the Act, subsection (5) is controlling.

The relators argue that subsection (5) unambiguously makes irrevocable a consent to adoption executed before March 24, 1971 and that therefore there is no basis for construing the statute otherwise.

The legislative records reveal that the proposals for amending ORS 418.270 were prompted by our decision in *Strobel v. Garrison,* 255 Or 16, 459 P2d 1001, 464 P2d 688 (1970). That decision caused widespread concern, particularly in the minds of adoptive parents, as to the validity of previous adoptions. The changes in ORS 418.270 were designed to limit the circumstances in which a natural parent could revoke a consent to adoption previously given.

■ The amendments to subsection (4) of ORS 418.270 make it evident that the legislature was concerned with the revocability of a consent to adoption where the child had been placed by the child-caring agency with

someone for adoption. Until there is such placement, the parent is free indefinitely under the statute to revoke the consent to adoption. This statutory treatment of the problem of the revocability of consent demonstrates that the legislature was concerned only with the interest of the natural parent on one hand and the interest of the persons who had custody for the purpose of adoption on the other. The interest of the child-caring agency could not have been a factor in the legislature's consideration of the problem of revocability because if it had, a time limit for revocation would have been imposed upon the parent where the child had not yet been put out for adoption.

Nor is there anything in the statute from which it can be inferred that the legislature saw any connection between the problem of revocability and the interest of the child.

■ If, then, the respective interests of the natural parent and the persons having custody for the purpose of adoption were the legislature's sole concern in amending subsection (4), there is no reason to believe that there would be any other concern with respect to those situations antedating the effective date of the Act. Therefore, there would be no reason to make subsection (5) operative to render irrevocable a consent to adoption where the child had not yet been placed in the custody of someone for adoption. For this reason we construe subsection (5) simply as the expression of the legislative intent to make the provisions of subsection (4) retrospective.

A peremptory writ of mandamus is denied.